IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 6, 2021

## RAY ARMSTRONG v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
No. 15-02553      Lee V. Coffee, Judge**

_____

### No. W2020-00419-CCA-R3-PC

_____

The Petitioner, Ray Armstrong, was convicted after a jury trial of two counts of sale of 0.5 grams or more of cocaine in a drug-free school zone, two counts of delivery of 0.5 grams or more of cocaine in a drug-free school zone, tampering with evidence, and resisting arrest.  The drug charges were merged, and the Petitioner was sentenced to serve an effective sentence of fifty and one-half years in prison.  He filed a timely post-conviction petition, alleging that he received ineffective assistance of counsel.  The post-conviction court held a hearing and denied relief, and the Petitioner appeals, asserting that trial counsel provided ineffective assistance by failing to inform the Petitioner of his sentencing exposure, failing to review relevant discovery with him, failing to call a witness, and waiving on appeal the trial court's refusal to instruct on a lesser included offense.  We conclude that with respect to each claim, the Petitioner has either failed to establish deficiency or has failed to establish prejudice, and we affirm the denial of relief.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Ray Armstrong.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd and Susan Taylor, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

### Trial

According to the testimony at the Petitioner's trial, law enforcement believed they witnessed the Petitioner conduct a drug transaction, approached to investigate, and observed two plastic bags in the Petitioner's mouth. *State v. Ray Armstrong*, No. W2016-01996-CCA-R3-CD, 2017 WL 6375950, at *1-3 (Tenn. Crim. App. Dec. 12, 2017), *perm. app. denied* (Tenn. Apr. 23, 2018). After a physical altercation, law enforcement recovered one bag with approximately 1.25 grams of cocaine in it and an empty bag that had been torn. *Id.* at *2-4. The Petitioner testified and presented evidence that he was a drug user rather than a drug dealer and that, while he had a plastic bag of cocaine hidden in his mouth, he did not attempt to eat it and it was torn when officers repeatedly punched him in the face. *Id.* at *5-7.

As pertinent to the issues raised on post-conviction, two law enforcement officers were riding bicycles through an area known for crime and drug offenses on June 13, 2014, when they saw the Petitioner and two men on a corner. *Id.* at *1, 2. Officer Benjamin Daugherty testified that they approached the men, and as he spoke to the Petitioner, he noticed plastic bags of crack cocaine in the Petitioner's mouth. He stated he "could see the entire bag of one of them, and then a portion of another." He ordered the Petitioner to spit, and the Petitioner "began chewing and trying to swallow" and attempted to flee. After a struggle during which he hit the Petitioner five to seven times in the face with his fists, the Petitioner spit out the plastic baggies. The Petitioner told law enforcement that he "had swallowed" prior to ceasing his efforts at resistance. Officer Daugherty testified that he found one small plastic baggie that was torn or chewed open with just residue in it, and then another baggie "that still had crack cocaine in it." He stated it was "[p]ossible that he had maybe swallowed" the contents of the "one that was open," which had been "[t]orn or chewed." Some cocaine was retrieved from the grass. Officer Daugherty was asked to identify "the item" that he recovered. On cross-examination, he stated he initially saw two baggies in the Petitioner's mouth with "something" in each.

Officer Brandon Cockman testified that he and Officer Daugherty approached the intersection and saw "a hand-to-hand movement" between one of two unkempt individuals and the Petitioner. They approached to pat down the men. Officer Cockman noticed the Petitioner's speech was slurred and saw a cellophane bag with a white substance in it sticking out from the Petitioner's mouth. Officer Cockman instructed the Petitioner to hand over the bag, and the Petitioner began to kick and resist. The Petitioner

attempted to pull the baggies out of his mouth and tear them. Officer Cockman testified they found "the baggy – the baggies." He testified that he "could physically see [the Petitioner] was eating the baggies, attempting to, you know." Officer Cockman further stated, "I don't know how much cocaine he did eat, but he was eating what was in those bags…." Officer Cockman summarized that when he saw the packaging, "that is when the struggle ensued, and [the Petitioner] attempted to destroy and eat the evidence." He acknowledged on cross-examination that he did not see whether the men on the corner were exchanging drugs or something else. He also agreed that he did not give the Petitioner time to hand over the object in his mouth but that he immediately "put [his] hands" on the Petitioner. He testified the Petitioner "was tearing into the bag. Put it back up to his mouth. Tear into the bag. Put it up to his mouth." Officer Cockman hit the Petitioner in the face. He clarified that he only saw one bag in the Petitioner's mouth but that two were recovered.

Officer Clinton Lanham testified that the Petitioner admitted to swallowing cocaine on the way to the hospital, but he acknowledged that this fact was not in his report and that he first reported hearing the statement only a month prior to trial, over a year after the arrest. Officer Lanham stated the Petitioner also bragged about buying his girlfriend two Infinities. None of the police officers saw the Petitioner exhibit symptoms of having ingested cocaine. Officer Darrell Cherry, who collected the cocaine, testified that the cocaine was wet and weighed two grams with the packaging. Special Agent Peter Hall testified that he received one bag which had been torn in half and contained a rocklike substance, which he identified as crack cocaine. The cocaine weighed 1.25 ounces without the packaging.

The Petitioner had $237 in smaller bills in his possession. *Id.* at *4. The two men who had been standing with the Petitioner ran away during the struggle, and law enforcement were not able to identify them. *Id.* at *2. The location where the Petitioner was arrested was within one thousand feet of a school and also within one thousand feet of a daycare, and the indictment included four counts related to the drug transaction, charging that a sale and a delivery had taken place within a drug-free school zone, specifying the school in two counts and the daycare in the other two counts. *Id.* at *4.

The State introduced recorded telephone calls that the Petitioner made from jail. The Petitioner made numerous incriminating statements, including that he was "'caught with some dope,'" that the police only took half of his money on arrest, that he had had to "'put the [sh**]'" into his mouth, that law enforcement got two grams of "'dope'" from him, that law enforcement "'know for sure I'm selling dope,'" "'that in the future he would "'keep it in [his a**],'"'" and a statement that "'[a]ll the customers come to me.'" *Id.* In one call, a woman told the Petitioner that she had "'sold two shirts,'" and the State

- 3 -

provided an expert witness who testified that cocaine was sometimes referred to as "'T-shirts.'" *Id.*

Mr. Norvil Moore testified on the Petitioner's behalf that the Petitioner was a habitual drug user and that they had used drugs together in the past. *Id.* at *5. Mr. Moore currently owned a tire shop and had employed the Petitioner to perform part-time work. *Id.* Mr. Moore testified that while the Petitioner may have committed theft to fuel his drug habit, the Petitioner was not a drug dealer and had never sold drugs. *Id.*

The Petitioner likewise testified that he did not sell drugs. *Id.* He stated he was schizophrenic and bipolar and that the money recovered on his arrest came from disability benefits and his part-time work for Mr. Moore. *Id.* He testified that he was addicted to drugs and explained that his criminal history was the result of a need to fund his addiction. *Id.* The Petitioner stated that on the day of his arrest, he was in the area to sell T-shirts and that he bought some crack cocaine for personal use. *Id.* at *6. He saw a man he knew named Staley at the corner where he was arrested, and he approached Staley, who was with another man. *Id.* When the police arrived, the Petitioner hid the cocaine he had purchased earlier in his mouth, and he was about to comply with the demand to turn it over when officers began to beat him, preventing him from complying. *Id.* He denied swallowing or attempting to swallow the cocaine and denied making any statement that he had swallowed it. *Id.* He denied selling drugs or receiving money from either of the men on the corner. *Id.* The Petitioner was impeached with a telephone call in which he said, "'I'm just going to tell them I use it.'" *Id.* at *7.

The jury found the Petitioner guilty of possession of 0.5 grams or more of cocaine with the intent to sell within one thousand feet of a school; possession of 0.5 grams or more of cocaine with the intent to deliver within one thousand feet of a school; possession of 0.5 grams or more of cocaine with intent to sell within one thousand feet of a daycare; possession of 0.5 grams or more of cocaine with intent to deliver within one thousand feet of a daycare; tampering with evidence by destroying it; and resisting arrest. *Id.* at *1, 7. The trial court sentenced the Petitioner as a Range II, multiple offender to forty years in prison for the drug offenses committed within one thousand feet of a school and to twenty years in prison for the drug offenses committed within one thousand feet of a daycare and merged all four convictions. *Id.* at *7. The court sentenced the Petitioner to ten years in prison for tampering with evidence and to six months for resisting arrest, and ordered these sentences to be served consecutively to one another and to the drug sentence. *Id.*

On direct appeal, the Petitioner challenged the sufficiency of the evidence, the trial court's denial of a motion to suppress premised on a lack of probable cause to seize the Petitioner, the admission of hearsay testimony, the trial court's refusal to charge attempt

- 4 -

as a lesser included offense of tampering with evidence, the State's comment on the absence of Staley, and a violation of double jeopardy. *Id.* at *1. This court concluded that the evidence was sufficient, that the suppression motion was properly denied, that the hearsay was admitted in error but the error was harmless, that the State did not violate the missing witness rule, and that merger had remedied the double jeopardy violation. *Id.* at *7, 9, 14-15, 16, 18. This court also concluded that the challenge to the trial court's refusal to charge attempted tampering with evidence was waived because the motion for a new trial, which listed as error the failure to charge lesser included offenses, referred specifically to casual exchange and did not specifically raise the issue in relation to the tampering conviction. *Id.* at *15-16. The Tennessee Supreme Court denied review. *State v. Ray Armstrong*, No. W2016-01996-SC-R11-CD (Tenn. Apr. 23, 2018) (order).

## Post-Conviction Hearing

The Petitioner filed a timely post-conviction petition, alleging various instances of ineffective assistance of counsel, including the issues raised on appeal: that counsel was ineffective in failing to explain the Petitioner's sentencing exposure to him; that counsel was ineffective in failing to review the recorded jail calls with him; that counsel was ineffective in failing to subpoena Staley for trial; and that counsel was ineffective in failing to preserve the issue regarding attempted tampering with evidence.

The Petitioner was represented at trial by two attorneys, trial counsel and co-counsel. Trial counsel worked for the Shelby County Public Defender's Office and was appointed to represent the Petitioner on a theft case in October 2014. The Petitioner was then indicted for the instant offenses, including the sale and delivery of cocaine,[1] but was not charged with having committed the offenses in a drug-free school zone. Trial counsel was appointed on the drug case after the preliminary hearing on the case.

Trial counsel reviewed discovery with the Petitioner and met with him numerous times, in jail and on each court date. In March 2015, the State extended a plea offer proposing that, in exchange for guilty pleas on both the theft and drug cases, the Petitioner would receive a sentence of five years for the theft case and twelve years for the drug charges, with a release eligibility of thirty-five percent. The Petitioner did not want to plead guilty and was hoping to settle the cases as misdemeanor offenses. Trial counsel testified that he did not think that seventeen years was a reasonable offer but that he believed he could have negotiated a lower sentence of eight to ten years if the Petitioner had been willing to agree. Trial counsel testified that the court voir dired the Petitioner with B felony numbers, but it was not yet determined if the Petitioner was a

---

[1] It is not clear if the Petitioner was indicted for tampering with evidence and resisting arrest at this time.

Range II or Range III offender. Prior to reindictment, trial counsel told the Petitioner that if he was a Range III offender, his sentencing exposure was forty to sixty years. On April 29, 2015, the prosecutor informed trial counsel that she intended to reindict the offenses and add the drug-free school zone enhancement, and she inquired if the Petitioner wanted to settle the case. Trial counsel went to see the Petitioner in jail the same day, but the Petitioner refused to negotiate. According to trial counsel, he attempted to get the Petitioner to negotiate a plea during the entire pendency of the case, but the Petitioner did not want to do so. When the case was reindicted, the offense became a Class A felony which would be served at one hundred percent. Trial counsel testified he told the Petitioner he would probably get a seventy-five-year sentence if he were convicted after reindictment. Trial counsel asked the Petitioner several times to try to make a plea offer to the State. The week before trial, the Petitioner agreed to make a plea offer, and trial counsel spoke with the division head of the prosecutor's office. However, by that time, the State would only consider an open plea.

Trial counsel testified that the recorded jail calls were not provided until close to the April 11, 2016 trial date. The State turned over hours of calls, and the prosecutor would not identify the calls she intended to use as evidence. Trial counsel continued the trial and moved to suppress the calls. The motion to suppress also addressed whether there was reasonable suspicion to search the Petitioner, and the motion hearing allowed trial counsel to preview the State's case. Trial counsel opined that the Petitioner was convicted based on the jail calls.

Trial counsel testified that he had an investigator assisting him during the case but that he did not know the identity of the two men who were with the Petitioner and escaped during the physical altercation. His notes did not indicate that the Petitioner had given him the name "Staley," and he testified that he did not have any information allowing him to locate Staley and that he did not believe he would have been able to find the witness based on nothing but a first name. Trial counsel testified that he would have attempted to find any witness that the Petitioner asked him to find, including the Petitioner's "partner in use," Staley. He located and interviewed Mr. Moore, whose testimony was helpful both in humanizing the Petitioner and in trying to show that the Petitioner was merely a drug user and not a drug dealer.

Co-counsel, who had worked at the public defender's office for seven years at the time of the post-conviction hearing, was brought into the case shortly before trial in April. This was co-counsel's sixth felony trial, and she met with the Petitioner multiple times before trial. Co-counsel confirmed that the Petitioner's attorneys "definitely" discussed his sentencing exposure with the Petitioner. However, co-counsel testified, "by the time I came onto the case, I wasn't really in the mode of giving him the hard sell about how he would definitely be convicted and how he really needed to consider signing

for more and more time, although, of course, in retrospect, I wish that I had." The Petitioner had a history of mental illness and intellectual disability, and he was a drug user. Co-counsel testified that conveying the seriousness of the Petitioner's situation was made more difficult by his disability and mental illness. Immediately before trial, the Petitioner agreed to try to negotiate a plea for eight years at one hundred percent service, but the prosecutor refused, and the prosecutor's supervisor did not want to get involved.

Co-counsel confirmed that the jail calls were produced shortly before the April 11, 2016, trial date. The Petitioner's attorneys moved to suppress the search of the Petitioner, the Petitioner's alleged statement in the ambulance, and the jail calls. Co-counsel testified that trial counsel had listened to many, many hours of calls and had taken notes on them, and the Petitioner's attorneys reviewed the notes with the Petitioner, including any incriminating statements they were able to identify from listening to the calls. However, co-counsel testified that the Petitioner did not hear the actual recordings until a jury-out hearing at trial. Co-counsel stated, "I think, in a perfect world, if we had played those for him when the twelve-year offer was on the table, that might have been something that could have made a difference in his decision-making." Co-counsel corroborated trial counsel's statement that the calls were very damaging to the case.

Co-counsel was able to locate Mr. Moore close to the time of trial, and she met with him and spoke with him prior to trial. Mr. Moore corroborated the Petitioner's testimony that he was merely a drug user and not a drug dealer. Co-counsel advised the Petitioner that the jury was more likely to credit the defense's theory if the Petitioner also testified that he was a drug user and not a dealer. Co-counsel testified that trial counsel attempted to locate Staley.

Co-counsel filed a motion asking for an attempt instruction regarding the tampering conviction, but the trial court refused based on the Petitioner's testimony that he did not attempt to eat the drugs but simply did not have a chance to spit them out before police began to beat him. Co-counsel recalled that she raised the issue of lesser included offenses in the motion for a new trial but did not specify the lesser included offense of attempted tampering in particular. She characterized the raising of the issue in the motion for a new trial as "a legitimate oversight."

The Petitioner testified that he was not able to read well and that he did not recall many of the details of his representation. His attorneys did not accommodate his disabilities by explaining things to him. He stated he only met co-counsel two weeks before trial and only saw her twice and that he only saw trial counsel five times over the two years he was incarcerated pending trial. He testified that he was caught in possession of the drugs but was not selling them and that he would have pleaded guilty if he had

been guilty of selling drugs. He maintained that the police had a vendetta against him and had stopped him numerous times.

The Petitioner repeated numerous times that he would have taken the twelve-year offer if he had known his sentence after trial would be fifty and one-half years. His attorneys told him he was being reindicted, but he did not understand what they meant. The Petitioner reiterated several times that they never informed him he could be sentenced to fifty years for the offenses. He said that if they had told him his sentencing exposure, it would have scared him and he would have taken the plea offer. He noted that he rejected the plea offer because the plea included his other offense, which he stated was an aggravated burglary and not a theft charge, and because he believed the State did not have sufficient evidence to prove the burglary charge at trial. He did not recall the trial court telling him what his range of punishment would be when the case was set for trial. The post-conviction court questioned the Petitioner, noting that the court always informed criminal defendants of their sentencing exposure and their charges. The Petitioner observed that it was unjust that he received a lengthy sentence for possession of a small amount of cocaine, particularly in comparison to the relatively light sentences received by those who were incarcerated with him and had committed violent crimes such as rape. He noted that he was also beaten by the police.

The Petitioner testified that he did not know about the jail calls until trial, noting in particular that he had never had the opportunity to listen to them. According to the Petitioner, if he had been able to listen to the jail calls, he would have agreed to the plea offer. He stated he did not know what evidence the State would present in its case in chief, but he acknowledged he was present at the preliminary hearing and the motion for a new trial.

The Petitioner asserted that he had all of Staley's contact information and that he gave the information to his attorneys, but they did not subpoena Staley. Staley was willing to testify, but when he saw the Petitioner's lengthy sentence, he was relieved that he had not appeared in court. The Petitioner denied that he had asked his attorneys to present the testimony of Mr. Moore.

The post-conviction court made a general credibility finding in favor of the Petitioner's attorneys and against the Petitioner. As pertinent to the issues raised on appeal, the post-conviction court found that both the Petitioner's attorneys and the trial court had informed him of his sentencing exposure, noting that trial counsel had told the Petitioner he could be sentenced to seventy-five years in prison. Regarding the jail calls, the post-conviction court noted that a suppression hearing was partly conducted in February and was continued in order to allow the attorneys to review jail calls and subpoena a police officer. The court found that the Petitioner knew the contents of the

calls, noting that the Petitioner was the one who had made the statements. The court further found that, had the Petitioner succeeded in convincing the State to accept the eight-year plea offer made immediately prior to trial, the court generally "would not take any negotiated settlement unless there were a material change," and it found there had been no material change because the Petitioner knew his exposure and the State's plea offer. Regarding the witness Staley, the post-conviction court found that the Petitioner had not in fact provided any information to his attorneys through which they could have located Staley. Noting that Staley had not testified at the post-conviction hearing, the post-conviction court concluded the Petitioner could not show prejudice in a failure to subpoena Staley. Regarding the waiver of the lesser included offense, the court noted that co-counsel was particularly thorough and had raised twenty-four issues in her motion for a new trial and that the appellate court nevertheless relied on waiver regarding the attempt instruction. The post-conviction court concluded that the issue was addressed on direct appeal, had been previously determined, and could not be revisited on post-conviction, but the court also concluded that the evidence did not support an instruction for attempt. The Petitioner appeals the denial of his post-conviction petition.

## ANALYSIS

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witnesses, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of fact and law reviewed de novo. *Id.*

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both

components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

"Establishing deficient performance requires showing 'that counsel's representation fell below an objective standard of reasonableness,' which standard is measured by 'professional norms' prevailing at the time of the representation." *Garcia v. State*, 425 S.W.3d 248, 256-57 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As long as counsel's representation was "'within the range of competence demanded of attorneys in criminal cases,'" counsel will not be deemed to have performed deficiently. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Deficient performance requires a showing of errors so serious that "'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The reviewing court should not second-guess strategic choices or measure counsel's performance by "'20-20 hindsight.'" *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997) (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). In reviewing counsel's professional decisions, a "'fair assessment … requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Goad*, 938 S.W.2d at 369 (quoting *Strickland*, 466 U.S. at 689). The failure of a particular strategy does not, without more, establish unreasonable representation. *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004). "Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004).

In determining prejudice, the reviewing court must decide if there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 694). In other words, "'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 695). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" *Calvert*, 342 S.W.3d at 486 (quoting *Strickland*, 466 U.S. at 694).

## I. Sentencing Exposure

The Petitioner alleges that trial counsel were ineffective because they did not communicate his sentencing exposure to him prior to his reindictment under the drug-free

school zone enhancement. He alleges that he suffered prejudice because he would have taken the plea offer if he had understood he could possibly receive a fifty-year sentence. We agree with the State that the Petitioner cannot establish deficiency.

At the post-conviction hearing, the Petitioner testified that he was never told that he was facing a sentence as long as fifty years and that if he had been informed of his exposure, he would have taken the plea offer of a seventeen-year sentence for the drug case and the outstanding theft charge. Trial counsel, on the other hand, testified that he initially told the Petitioner he could receive as many as sixty years and later informed the Petitioner that, if the State reindicted the offense, he would have to serve one hundred percent of the sentence and that he could be sentenced to as much as seventy-five years. Trial counsel visited the Petitioner in jail the same day trial counsel was told that the State would be charging that the offenses occurred in a drug-free school zone, so that he could discuss the plea offer with the Petitioner. He stated he repeatedly urged the Petitioner to negotiate a plea but that the Petitioner refused. By the time the Petitioner agreed to commence negotiations, the State would not consider any plea bargain. Co-counsel likewise testified that the Petitioner was told his sentencing exposure, although she did not attempt to present a "hard sell" regarding plea negotiations when she joined trial counsel on the case due to the proximity to trial. The Petitioner eventually agreed to consider a plea negotiation, but the State refused.

The post-conviction court found that the trial court had also informed the Petitioner of his exposure and that the Petitioner had perjured himself by testifying he did not know the potential consequences of trial. The post-conviction court ordered the court reporter to create a transcript of the Petitioner's arraignment under the superseding indictment. The transcript reveals that the Petitioner was told that the charges were Class B felonies which carried from eight to thirty years. While this is true for the counts charging the Petitioner with the drug offenses within one thousand feet of a daycare, the counts charging the Petitioner with the offenses within one thousand feet of a school were enhanced to Class A felonies with a higher range of penalties. *See* T.C.A. §§ 39-17-417(c)(1); 39-17-432(b)(1)(B), (b)(3) (2014); *Ray Armstrong*, 2017 WL 6375950, at *1.

Although the record accordingly does not support the determination that the Petitioner was told his correct exposure at arraignment after being reindicted, the post-conviction court also made a finding crediting trial counsel's testimony that he told the Petitioner he could be sentenced to seventy-five years in prison after reindictment. Trial counsel testified that the Petitioner's sentencing exposure was extensively discussed and that he also told the Petitioner prior to reindictment that he could be sentenced to sixty years in prison. Co-counsel confirmed that the Petitioner's attorneys discussed his sentencing exposure with him. The post-conviction court's credibility determinations are binding on an appellate court unless the evidence preponderates against them. *Kendrick*,

454 S.W.3d at 457. The post-conviction court found that trial counsel told the Petitioner he could serve as many as seventy-five years if he refused the seventeen-year plea offer which included a theft offense, and accordingly, the Petitioner has not established deficiency. The Petitioner's lengthy sentence is the result of the Legislature's determinations regarding the punishment of drug offenses committed in a drug-free school zone and not the result of any failure by trial counsel to inform the Petitioner of his potential sentencing exposure.

## II. Jail Calls

The Petitioner asserts that his trial counsel performed deficiently by failing to play the jail telephone calls for him prior to trial and that he was prejudiced because he would have accepted the State's plea offer if he had had the chance to listen to his incriminating statements. We conclude that because there was no plea offer available at the time the recordings became accessible to trial counsel, the Petitioner cannot establish prejudice.

At the post-conviction hearing, the Petitioner testified that his attorneys never permitted him to listen to the recorded calls prior to trial. He asserted that he would have accepted the seventeen-year plea offer if he had had the opportunity to see the strength of the State's case with the recorded calls. Trial counsel testified that the Petitioner initially had a plea offer of seventeen years for two cases and that the prosecutor contacted him in April 2015 to say that she intended to reindict the offenses, adding the drug-free school zone enhancement, and to give the Petitioner an opportunity to reconsider the plea offer. The Petitioner still rejected the offer. Trial counsel testified that the jail calls were not produced until shortly before trial was scheduled in April 2016, and he moved for a continuance in order to try to suppress the calls. At the time, the prosecutor would not reveal which calls were relevant, and trial counsel attempted to review hours of calls. Co-counsel confirmed that the calls were not produced until shortly before the scheduled trial date in April 2016.[2] She stated that trial counsel reviewed the calls, made extensive notes, and reviewed the contents of the calls with the Petitioner. However, she confirmed that the Petitioner did not hear the actual recordings until a jury-out hearing at trial. Both trial counsel and co-counsel testified that the calls were extremely damaging. Co-counsel stated, "I think, in a perfect world, if we had played those for him when the twelve-year offer was on the table, that might have been something that could have made a difference in his decision-making. But, no, by the time we got to trial, it was clear that some of those calls were very incriminating." The post-conviction court found that the Petitioner

---

[2] The post-conviction court stated that trial had been continued from the trial date of April 11, 2016, in part because of the jail calls. Referencing its notes, the court stated at first that the calls were provided in February and then stated that they were provided over the Christmas holidays. The motion for a new trial included a footnote that the calls were provided in February 2016.

was aware of the content of the calls, and this credibility determination is binding on this appellate court unless the evidence preponderates otherwise. *Kendrick*, 454 S.W.3d at 457.

While the Petitioner testified he would have attempted to negotiate a plea agreement if he had actually heard the calls and while co-counsel corroborated that the Petitioner might have been more willing to accept the twelve-year plea offer if he had had the opportunity to actually hear the calls, we nevertheless conclude that the Petitioner cannot establish prejudice. The testimony at the hearing established that the State made a plea offer prior to reindicting the Petitioner in May 2015 and that this plea offer was no longer available after reindictment. Trial counsel did not know about the recorded calls at the time that plea negotiations were in progress. The calls were received shortly before trial, and counsel had to devote time to weeding through them to find relevant material. The Petitioner attempted to negotiate a guilty plea close to this time, but neither the prosecutor on the case nor her supervisor would agree to enter into any plea agreement except an open plea. The post-conviction court made a finding that on the approach of trial, the court would not have "take[n] any negotiated settlement unless there were a material change" and that there was no material change. The record demonstrates that there is no reasonable probability that plea negotiations would have succeeded at the time the recorded calls became available to trial counsel had counsel played the calls for the Petitioner. *See Shawnte L. Shade v. State*, No. E2017-00562-CCA-R3-PC, 2018 WL 1091925, at *5 (Tenn. Crim. App. Feb. 27, 2018) (trial counsel did not inform the petitioner of the amount of the theft or whether the amount matched the victim's income tax return, but the petitioner could not show a reasonable probability that counsel's actions affected the plea negotiations). Accordingly, the Petitioner cannot demonstrate prejudice.

## III. Failure to Call Witness

The Petitioner challenges counsel's failure to call Staley to testify that the Petitioner was merely purchasing and using drugs on the day of his arrest. However, the Petitioner has not established either deficiency or prejudice regarding this claim.

The Petitioner testified that he provided trial counsel with Staley's contact information and that trial counsel failed to investigate. Trial counsel, on the other hand testified that he did not have any way to identify or contact Staley. The Petitioner's attorneys did locate and contact Mr. Moore, interview him, and call him at trial to corroborate the theory of the defense. The post-conviction court credited trial counsel that the Petitioner did not convey information that would have allowed them to locate Staley, and accordingly the Petitioner has not shown deficiency. Because Staley did not testify at the post-conviction hearing, it is impossible to determine what impact his

- 13 -

testimony at trial would have had, and accordingly, the Petitioner has likewise failed to establish prejudice. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

## IV. Failure to Preserve Instruction on Attempted Tampering

The Petitioner next asserts that counsel were deficient in failing to preserve as an issue on direct appeal that the trial court refused an instruction on attempted tampering. The State responds that there was no evidence to support an instruction on attempt and that the Petitioner did not suffer prejudice. We conclude that, in light of the considerable deference afforded counsel's decisions regarding which issues to raise on appeal, the Petitioner has not established deficiency.

The post-conviction court found that this issue had been previously determined. However, this court did not consider on appeal whether the Petitioner's constitutional right to the effective assistance of counsel was violated by the failure to preserve this issue; instead, it merely determined that a challenge to the failure to include lesser included offenses was waived. Accordingly, the issue of ineffective assistance of counsel has not been previously determined or waived.

The Petitioner claims ineffective assistance in preserving the issue, and we examine whether failure to include the issue in the motion for a new trial amounted to deficient representation. While *Carpenter v. State*, 126 S.W.3d 879, 888 (Tenn. 2004), considered a claim of ineffective assistance in raising an issue in the appellate brief, the analysis is also pertinent to a post-trial decision regarding which issues to preserve in a motion for a new trial. *See Thomas Pleas Arwood, Jr., v. State*, No. M2008-01660-CCA-R3-PC, 2009 WL 2502012, at *12 (Tenn. Crim. App. Aug. 17, 2009) (analyzing under *Carpenter* a failure to raise issues in motion for a new trial); *see also Danny Jay Branam, Jr., v. State*, No. E2019-01149-CCA-R3-PC, 2020 WL 4015615, at *6 (Tenn. Crim. App. July 16, 2020), *perm. app. denied* (Tenn. Dec. 3, 2020) (analyzing under *Carpenter* a failure to raise the issue in a motion for a new trial or on appeal). A reviewing court gives "considerable deference" to counsel's judgment regarding which issues to raise on appeal, so long as the choices are within the "range of competence required of attorneys in criminal cases." *Carpenter*, 126 S.W.3d at 887. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome,'" although the Tennessee Supreme Court has declined to hold that this is the "*only* way to show" deficiency. *Id.* at 888 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). When a claim of ineffective assistance of counsel is premised on the failure to preserve an issue on appeal, the reviewing court should determine the merits of the issue. *Id.* at 887. "Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* The strength of the omitted issue also has bearing on whether failure to raise the

issue resulted in prejudice. *Id.* The reviewing court may consider the following factors in determining whether omitting an issue on appeal was deficient:

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?
6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7) What was appellate counsel's level of experience and expertise?
8) Did the petitioner and appellate counsel meet and go over possible issues?
9) Is there evidence that counsel reviewed all the facts?
10) Were the omitted issues dealt with in other assignments of error?
11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* at 888 (noting that the final factor reaches the ultimate issue of deficiency and "therefore is not helpful in deciding whether appellate counsel's performance was deficient").

Examining the factors above, we conclude that the issue was "significant and obvious," as co-counsel testified that she intended to include it in the motion. The trial court relied on the "arguable contrary authority" that the offense need not be charged because it was not supported by the evidence. However, a lesser included offense should be charged if "any evidence exists that reasonable minds could accept to prove the existence of a lesser-included offense" and if the evidence is legally sufficient to support a conviction for the offense. *State v. Ely*, 48 S.W.3d 710, 722 (Tenn. 2001). In this case, the State's own witnesses presented evidence which a reasonable mind could accept to establish the lesser included offense of attempt, including numerous statements from law enforcement and the prosecutor that the Petitioner "maybe swallowed," was "trying to swallow" and "attempted to" or "tried to" destroy the drugs, and testimony that the Petitioner showed no symptoms of having ingested cocaine.

While this issue was omitted, co-counsel here presented a particularly thorough motion for a new trial which included twenty-four issues and spanned eight pages of the technical record, in single-spaced type. This court on appeal agreed with the Petitioner's argument that there was error in the admission of hearsay testimony, although the error was found to be harmless. *Ray Armstrong*, 2017 WL 6375950, at \*15. Likewise, this court concluded that the Petitioner was correct that the convictions based on overlapping

school zones violated double jeopardy but determined that the appropriate remedy was merger, which had already been ordered. *Id.* at *18. Accordingly, the omitted issue was not clearly stronger than those raised on appeal.

Co-counsel had requested the attempt instruction and accordingly had preserved the issue at trial. The refusal to instruct attempt would have been reviewed de novo on appeal. *State v. Fayne*, 451 S.W.3d 362, 368 (Tenn. 2014). Regarding the decision not to raise the issue, co-counsel testified that the omission of the issue was "a legitimate oversight."

There was minimal testimony regarding co-counsel's experience and expertise. While co-counsel had recently joined the public defender's office, the record is silent regarding her prior experience, and the Petitioner's was her sixth felony trial. Based on the thoroughness of the challenged motion, we agree with the post-conviction court's finding that co-counsel's representation reflected significant expertise. The motion, as noted above, was specific and thorough, raising the sufficiency of the evidence, the refusal to suppress the drugs, the refusal to suppress the Petitioner's statements to police, the refusal to suppress the jail calls, the denial of a discovery request, the denial of a request to sit at counsel table, numerous sub-issues regarding the exclusion of a photograph showing the Petitioner's injuries, the exclusion of the Petitioner's medical records, the trial court's decision to permit a witness to testify as an expert, the introduction of evidence that had been ruled inadmissible, the admission of offenses used as impeachment, the exclusion of testimony tending to show the Petitioner was a drug user, and other issues. The Petitioner did not introduce proof regarding whether co-counsel consulted the Petitioner regarding the motion, but co-counsel testified that the Petitioner had a mental illness and intellectual disability and that he had difficulty understanding the issues his counsel attempted to discuss with him. Co-counsel was clearly conversant with the facts of the case and the trial proceedings. The issue regarding attempt was not, however, dealt with in any other assignment of error.

The post-conviction court found that co-counsel was not deficient in drafting the motion for a new trial, noting from the bench that she was thorough "sometimes to the point of almost being annoying." Counsel is not "not constitutionally required to raise every conceivable issue on appeal." *Carpenter*, 126 S.W.3d at 887. While we have concluded that some of the *Carpenter* factors weigh in favor of the Petitioner's claim, we cannot conclude that counsel's performance was outside the "range of competence required of attorneys in criminal cases." *Id.* We note that although co-counsel testified she intended to include the issue in the motion for a new trial, it does not necessarily follow that omission of the issue would amount to deficiency. The last factor listed in *Carpenter*, whether the omission of the issue was "an unreasonable [decision] which only an incompetent attorney would adopt," "reaches the ultimate question" under the

deficiency inquiry. *See id.* at 888. This ultimate question must be answered in the negative. Having concluded that counsel's performance was not deficient, we do not reach the prejudice inquiry. *See id.* at 893.

## CONCLUSION

Based on the foregoing analysis, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE